UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAZMINE M. BEAMAN,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

**DECISION AND ORDER**

1:18-CV-01344 EAW

## INTRODUCTION

Represented by counsel, plaintiff Jazmine M. Beaman ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB"), supplemental security income ("SSI"), and child's insurance benefits (CIB). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 12), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 12) is granted and Plaintiff's motion (Dkt. 9) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for CIB, DIB, and SSI on November 25, 2014. (Dkt. 5 at 19, 105).[1] In her applications, Plaintiff alleged disability beginning March 1, 2012, due to back problems and complications from gastric bypass surgery. (*Id.* at 81). Plaintiff's applications were initially denied on March 11, 2015. (*Id.* at 119-24). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Lisa B. Martin on August 9, 2017, with Plaintiff appearing in Buffalo, New York, and the ALJ presiding over the hearing from the National Hearing Center, Falls Church, Virginia. (*Id.* at 19, 38-80, 153-59). On October 31, 2017, the ALJ issued an unfavorable decision. (*Id.* at 16-37). Plaintiff requested Appeals Council review; her request was denied on September 28, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the

ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on March 31, 2015, and that Plaintiff had not attained 22 years of age as of March 1, 2012, the alleged onset date. (Dkt. 5 at 21). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 1, 2012, the alleged onset date. (*Id.*).

At step two, the ALJ found that, prior to attaining age 22 and through the date of the decision, Plaintiff suffered from the severe impairments of "lumbar spine disorder associated with congenital malformation and arachnoid cyst formation, thoracic spine disorder, cervical spine disorder, history of gastric bypass surgery with residual gastrointestinal disorders, obesity, headaches, depression, bipolar disorder, anxiety disorder, and chronic pain disorder." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairment of substance abuse was non-severe. (*Id.* at 22).

At step three, the ALJ found that, prior to attaining age 22 and through the date of the decision, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the requirements of Listings 12.04 and 12.06 in reaching this conclusion. (*Id.* at 22-24).

Before proceeding to step four, the ALJ determined that, prior to attaining age 22 and through the date of the decision, Plaintiff retained the RFC to perform a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that:

> [Plaintiff] needs a[n] opportunity to briefly change positions as often as every 30 minutes for 1-2 minutes (remaining on task), and then have access to normal work breaks to make longer position changes. She is precluded from all ladders, ropes, and scaffolds climbing, and is limited to occasional postural motions otherwise. She is precluded from all exposure to dangerous work hazards, which would include unprotected heights and exposed moving machinery. She is limited to work that is routine and simple in complexity, does not require fast assembly quota pace work, and would allow for up to 5% off-task behavior because of symptom distractions. She is limited to occasional, required work interactions with coworkers, supervisors, and the public.

(*Id.* at 24).

At step four, the ALJ found that, prior to attaining age 22 and through the date of the decision, Plaintiff was unable to perform any past relevant work. (*Id.* at 29).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of routing clerk and mail sorter. (*Id.* at 30-31). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time prior to the date she attained age 22 and through the date of the decision. (*Id.* at 31).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing that the ALJ's decision was unsupported by substantial evidence. Plaintiff specifically argues that the ALJ's highly specific RFC was based on her own lay opinion as the only physical medical opinion was that of consultative examiner Dr. John Schwab, which was rendered stale by the significant deterioration of Plaintiff's condition.

(Dkt. 9-1 at 21-30). The Court has considered this argument and, for the reasons discussed below, finds it to be without merit.

## A. The ALJ's RFC Assessment was Supported by Substantial Evidence

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). However, a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age. *See Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err in relying on dated opinions where there was no indication the plaintiff's "condition had significantly deteriorated after the issuance of . . .

[the] opinions such that they were rendered stale or incomplete").

Plaintiff argues the ALJ erred in relying on Dr. Schwab's opinion because it was "rendered stale by Plaintiff's deteriorating physical condition and subsequent injury." (Dkt. 9-1 at 29). The Court disagrees. As an initial matter, the Court notes whether Dr. Schwab's opinion was rendered stale is not material to whether Plaintiff is eligible for CIB and DIB. The relevant time period for Plaintiff's CIB application is her alleged disability onset date through August 28, 2013, the date she turned 22 years of age. 20 C.F.R. § 404.350(a)(5); *see also Plumley v. Astrue*, No. 2:09-CV-42, 2010 WL 520271, at *3 (D. Vt. Feb. 9, 2010) (in order to be eligible for CIB, the plaintiff "must demonstrate that she became disabled before she reached age 22"). The relevant time period for Plaintiff's DIB application is her alleged disability onset date through March 31, 2015, her date last insured. 2 U.S.C. § 423(a)(1)(A); *see also King v. Colvin*, No. 14-CV-829S, 2016 WL 1165309, at *1 (W.D.N.Y. Mar. 23, 2016) ("[T]he relevant time period for Plaintiff's application [is] from . . . his alleged disability onset date through[] the date last insured."). As such, whether Dr. Schwab's March 2015 opinion was rendered stale by Plaintiff's subsequent treatment and condition in 2016 is not material to Plaintiff's eligibility for CIB and DIB.

Further, while the purported staleness of Dr. Schwab's opinion is relevant to Plaintiff's eligibility for SSI, the Court finds the record does not demonstrate Plaintiff's condition significantly deteriorated after Dr. Schwab's March 2015 opinion. Specifically,

Plaintiff argues her MRIs and November 2016 hemilaminectomy[2] to drain her cyst rendered Dr. Schwab's opinion stale. (Dkt. 9-1 at 29-30). However, Plaintiff's MRIs demonstrate that her condition remained generally the same before and after her surgery. On April 20, 2015, prior to Plaintiff's 2016 hemilaminectomy, Dr. Peter Ferin reviewed Plaintiff's MRI and noted a stable prominent arachnoid cyst, no cord gliosis, minor degenerative disc disease, and that "[t]here [was] no apparent change to [her] baseline exam from October 9, 2014." (Dkt. 5 at 859). After Plaintiff's 2016 hemilaminectomy, Dr. Kenneth D. Pearsen reviewed Plaintiff's December 7, 2016, MRI and noted that Plaintiff's "[o]verall thoracic spine alignment [was] unremarkable and unchanged," and that her disc space levels, disc herniations, and degenerative bulging discs remained stable. (*Id.* at 996-97).

Additionally, in his objective examinations of Plaintiff in 2017, Dr. Derek Gallucci did not observe issues with Plaintiff's musculoskeletal system (*id.* at 901, 921, 926, 935), which was consistent with Dr. Mark Perry's April 26, 2017, observation that Plaintiff had normal back and musculoskeletal range of motion and no back pain (*id.* at 861-62). As such, Plaintiff's MRIs and treatment notes after her 2016 hemilaminectomy do not indicate that her condition significantly deteriorated after Dr. Schwab's March 2015 opinion. *See Palistrant v. Comm'r of Soc. Sec.*, No. 16-CV-588-FPG, 2018 WL 4681622, at *6 (W.D.N.Y. Sept. 28, 2018) (despite the plaintiff's subjective complaints of increased pain

---

[2] "A hemilaminectomy is a type of spine surgery . . . which removes a part of the vertebra called a lamina . . . while still maintaining the stability and integrity of the spine." *Williams v. Colvin*, No. 15 Civ. 6719 (KMK) (PED), 2016 WL 11270671, at *1 n.3 (S.D.N.Y. Dec. 14, 2016) (citation omitted). "[The surgery] creates more space in the spinal canal and is meant to release nerve tissue from pressure." *Id.*

and restricted ranges of motion, no evidence the plaintiff's condition had significantly deteriorated where treatment notes observed Plaintiff's improved condition and MRI did "not appear to demonstrate significant deterioration from prior cervical spine MRIs").

Dr. Schwab opined that Plaintiff had no restrictions. (Dkt. 5 at 814). The ALJ gave this opinion "partial weight" because although Plaintiff's "physical impairments do not preclude all work-related activities," Plaintiff's "history of gastric bypass surgery, back disorders, and chronic pain warrant some work-related limitations." (*Id.* at 28). Additionally, the ALJ noted that Dr. Schwab's opinion was based on a one-time examination. (*Id.*). The Court finds that the ALJ did not commit error in affording Dr. Schwab's opinion partial weight as she thoroughly discussed and considered Dr. Schwab's opinion, and her reasons for affording it limited weight were proper and supported by the record. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) ("[T]he ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of other sources, as long as she address[es] and discuss[es] the opinion." (internal quotation marks omitted)).

Having concluded Dr. Schwab's opinion was not rendered stale and that the ALJ properly relied upon it, Plaintiff's argument that the ALJ based her highly specific RFC based upon her own lay opinion necessarily fails. It is clear that the ALJ fashioned her RFC finding by referring to Dr. Schwab's opinion and incorporating additional restrictions based on Plaintiff's own testimony. For example, the ALJ limited Plaintiff to no ladders, ropes, scaffolds climbing, occasional postural motions, and to work that would permit her to change positions in order to account for Plaintiff's testimony that she had difficulty with

postural activities, including standing and sitting. (Dkt. 5 at 28). Moreover, due to Plaintiff's history of gastric bypass surgery and headaches, the ALJ limited Plaintiff to no exposure to dangerous work hazards. The RFC assessment was supported by Dr. Schwab's opinion and Plaintiff's testimony and thus was supported by substantial evidence. *See Dougherty-Noteboom v. Berryhill*, No. 17-CV-00243-HBS, 2018 WL 3866671, at *10 (W.D.N.Y. Aug. 15, 2018) (ALJ's RFC assessment was not based on ALJ's lay opinion where it corresponded with the plaintiff's testimony and with an expert medical source statement).

Plaintiff also argues the ALJ erred by failing to consider Plaintiff's treatment for her back, which included pain management, injections, and spine surgery, when evaluating Plaintiff's credibility and subjective complaints. (Dkt. 9-1 at 20-21). The Court is not persuaded by this argument. In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[] that could reasonably be expected to produce'" his symptoms. *Id.* (quoting 20 C.F.R. § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective evidence, the ALJ must engage in a credibility inquiry." (*Id.*).

In this case, the ALJ applied the two-step inquiry. The ALJ found that while Plaintiff's medically-determinable impairments could reasonably be expected to cause

some of the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. (Dkt. 5 at 24-25). The ALJ thoroughly reviewed the medical evidence in the record and found that Plaintiff's symptoms were controlled with conservative treatment measures, citing: a March 2012 office visit in which Plaintiff was advised to treat her back pain with medication (*id.* at 424, 426); Plaintiff's September 2014 hospitalization for complaints of dizziness and syncope in which she was diagnosed at discharge with back pain, but was advised to continue her medication (*id.* at 463-75); Dr. Schwab's March 2015 consultative examination in which he opined that Plaintiff's "cane was not medically necessary for ambulation," and that Plaintiff "demonstrated full range of motion in her joints, as well as, the cervical and lumbar areas of her spine" (*id.* at 812-15); a September 2016 office visit in which Plaintiff reported back pain that was aggravated by movement, but no changes were made to Plaintiff's treatment regimen (*id.* at 960); a January 2017 office visit in which Plaintiff's physical examination was unremarkable at that time (*id.* at 946); a May 2017 office visit in which although Plaintiff reported constant sharp pain, her examination was essentially unremarkable, and Plaintiff was advised to continue her treatment regimen (*id.* at 924-27). (*Id.* at 24-27). Additionally, as discussed above, Plaintiff's MRIs were unremarkable and demonstrated Plaintiff's condition was stable. Accordingly, the ALJ's consideration of Plaintiff's treatment was proper, and her conclusion regarding Plaintiff's credibility was supported by substantial evidence. *See Pahl v. Berryhill*, No. 16-CV-538S, 2018 WL 4327813, at *5 (W.D.N.Y. Sept. 11, 2018) (conservative course of treatment supported the ALJ's determination that the plaintiff was not as debilitated as she testified);

*Norman v. Astrue*, 912 F. Supp. 2d 33, 74 (S.D.N.Y. 2012) (plaintiff's allegations of inability to work found not credible where MRI scan was "unremarkable").

In assessing Plaintiff's RFC, the ALJ was free "to credit some of [P]laintiff's statements while discrediting others." *Dougherty-Noteboom*, 2018 WL 3866671, at *10 (not error for ALJ to reject portion of the plaintiff's testimony where the ALJ, as fact finder, had the discretion to determine the plaintiff was not credible); *see also Barbato v. Astrue*, No. 09-CV-6530T, 2019 WL 2710521, at *5 (W.D.N.Y. July 7, 2010) (not error for the ALJ to discount some of the plaintiff's subjective complaints where he found that the plaintiff was not entirely credible). Further, the ALJ's RFC assessment was more generous than the assessment by Dr. Schwab and "[w]here an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." *Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) (internal quotation marks and citations omitted); *see also Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he fact that the ALJ's RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand.").

Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). The ALJ reasonably concluded that Plaintiff failed to meet her burden in this case. In formulating the RFC assessment, the ALJ considered the objective medical evidence, Plaintiff's treatment history, allegations, and the opinions of physicians. As such, the RFC assessment in this case is consistent with the record and is supported by substantial

evidence. Accordingly, neither reversal nor remand is warranted.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: January 27, 2020
Rochester, New York